**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**WILFREDO SERRANO,**

        **Plaintiff,**

**v.**                                                     **Case No.  8:06-cv-182-T-TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States
Social Security Administration,**

        **Defendant.**

_____/

## O R D E R

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.  For the reasons set out herein, the decision is affirmed.

### I.

Plaintiff was fifty-three years of age at the time of his administrative hearing.  He stands 5', 6" tall and weighed 208 pounds.  Plaintiff has a GED and past relevant work as a systems analyst/programmer.  Plaintiff applied for disability benefits in January 2003, alleging disability as of January 1, 1997, by reason of sleep apnea, asthma, arthritis in his hands, and a bad lower back.  The Plaintiff's application was denied originally and on reconsideration.

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the Defendant in this suit.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. The Plaintiff also presented testimony from his wife and a vocational expert was called by the ALJ. Plaintiff testified that he worked for eighteen years as a computer analyst and programmer for Johnson & Johnson. He last worked for the company in 1997 or 1998. He testified that his performance had started to fall off and he was having difficulty concentrating and was falling asleep on the job. When he went for his evaluation, he was notified that he was terminated. He sought treatment after his termination and was told he suffered from sleep apnea. According to his testimony, his condition has worsened. He was prescribed a CPAP machine, which did help with the problem although he had difficulties keeping the mask on during the night. Plaintiff testified that he also suffers from asthma occasionally and has for a number of years. Additionally, he began noticing problems with his hands 1998 and they have become more painful.

Plaintiff also testified that he developed depression as well and at times he does not feel like doing anything other than crying. By his testimony, he has worked since age seventeen and always supported his family and it is distressing to him that he is unable to do so. He testified that his concentration is now very poor, and when he reads things he gets very tired and cannot grasp what he is reading. He testified further that, when he was working and to the present, he has to take naps a couple of times a day for fifteen to thirty minutes but he has difficulty sleeping at night.

2

As far as daily activities, Plaintiff indicated that he occasionally goes to the mall with his brothers or by himself.  Although he can drive, it is dangerous and he lets his wife drive if possible.  According to Plaintiff, he would be unable to maintain sufficient attention to work a full eight-hour day.  Plaintiff acknowledged to the ALJ that he had sought other employment after he lost his job, but he fell asleep in one interview.  His medical records from 1997 to 2001 suggest that he mainly sought treatment for his breathing problems and the apnea came later.  See Plaintiff's testimony (R. 291-308).

Carmen Munoz testified that she has been married to the Plaintiff for thirty years. She stated that, before Plaintiff lost his job, she had noticed that he was snoring very loudly and was not sleeping well.  He complained about falling asleep on the job and his employer was suspicious he might be using drugs, although he was not.  In her view, it was simply a matter that he could not sleep at night and was falling asleep on the job or wherever he was. When they were at home, she noticed Plaintiff would fall asleep watching the television or when they were talking.  When they would be driving, Plaintiff would stop and tell her she had to drive.  The condition not only affected his level of alertness but also his ability to remember.  Ms. Munoz testified that after Plaintiff lost his job he was very quiet, often cried, and was depressed because he was unable to provide for his family.  The witness acknowledged that the use of the machine had helped her husband but he was not back to where he was previously.  She further testified that he complained about difficulty using his hands because of pain.  The witness could not recall the last time her husband had been out for a full eight hours in a day.  See Ms. Munoz's testimony (R. 308-16).

3

Finally, the ALJ took testimony from Teresa Manning, a vocational expert (hereinafter "VE"). The witness testified on an assumption of an individual of similar age, education, and work experience of the Plaintiff who could perform only simple, repetitive tasks. According to the witness, with this limitation such individual would be unable to perform the Plaintiff's last job. However, the witness identified a number of other type jobs that such an individual could perform. Thus, in the medium classification, such individual could do the jobs of grocery bagger, auto detailer, and kitchen helper. If the individual could not perform even simple, repetitive tasks, there would be no work available to him in the national economy. On questioning by Plaintiff's counsel and the additional assumption that such person would require unscheduled breaks from fifteen to thirty minutes twice a day because they have fallen asleep at their work station, the VE opined that no jobs would be available in the national economy. Even if the naps were scheduled, such individual would not be able to perform the work of a systems analyst, although at lower level unskilled jobs perhaps an employer might accommodate such arrangement. See VE's testimony (R 316-19).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail. Significant to the ALJ's decision in this case was Plaintiff's date last insured, December 31, 2002.

By his decision of May 26, 2005, the ALJ determined that while Plaintiff has severe impairments related to asthma, COPD, and obstructive sleep apnea, he nonetheless had the residual functional capacity on or before his date last insured to perform a wide range of work

4

activity up to and including heavy exertional work that did not require the performance of more than simple, repetitive tasks.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 22-30). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate

that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises a single broad claim on this appeal.  As stated by the Plaintiff, "[t]he Administrative Law Judge erred by finding that Plaintiff's condition of asthma, COPD, and obstructive sleep apnea were severe impairments, but finding that his only functional limitation was that he was limited to work that did not require the performance of more than simple repetitive tasks."  (Doc. 17 at 10).  In essence, Plaintiff complains that the ALJ failed to properly consider his subjective complaint of daytime somnolence.  Indeed, the ALJ wholly failed to address the complaint and the resulting need to take periodic naps.  Even assuming the ALJ implicitly found that Plaintiff's testimony was not credible, Plaintiff urges that such a finding is unsupported by the medical record, which clearly indicated he suffered from obstructive sleep apnea and therefore supported his testimony of daytime somnolence.  To the extent that the ALJ relied on the fact that Plaintiff's sleep apnea responded well to the use of a CPAP or BiPAP machine, Plaintiff argues such reliance was improper as the record demonstrates that he had continuing problems with the mask either not fitting properly or coming off during use.  Thus, because his allegations of daytime somnolence and resulting limitations were not adequately discounted, Plaintiff urges his testimony should be accepted as true and, given the testimony of the VE, the decision should be reversed for an award of benefits, or at a minimum, for further review.  See id. at 10-12.

In response, the Commissioner argues initially that Plaintiff has failed to establish disability on or before his date last insured, December 31, 2002.  Further, the Commissioner argues that the ALJ properly addressed Plaintiff's subjective complaints consistent with this

circuit's pain standard and adequately discredited them as inconsistent and unsupported by the medical evidence.  In the Commissioner's view, the ALJ properly concluded from the medical record that Plaintiff's sleep apnea was adequately controlled through the use of a CPAP or a BiPAP machine.  (Doc. 18 at 5-8).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)).  A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability.  Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  If the ALJ determines not to credit a claimant's subjective testimony, he must articulate explicit and adequate reasons for his decision.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Foote v. Chater, 67 F.3d 1553, 1561-62 (1995).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  Hale, 831 F.2d at 1012.

To the extent that Plaintiff complains that the ALJ failed to apply the proper standard, the decision reflects otherwise.  Here, although the ALJ did not expressly refer to the "pain standard," his citation to 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, see

8

(R. 26), reveals his understanding of the applicable standard, and a fair reading of the decision reflects his application of the standard. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002). Thus, the ALJ found that Plaintiff had medically determinable impairments, namely, asthma, COPD, and obstructive sleep apnea, that could reasonably give rise to symptoms alleged, just not to the extent that he was precluded from performing all work prior to December 31, 2002. (R. 29).

As for the ALJ's consideration of the credibility of Plaintiff's subjective complaints, Plaintiff is correct that the decision is not a model of clarity. For example, the ALJ did not recount Plaintiff's subjective allegations and testimony in the body of his decision. As a result, Plaintiff's testimony regarding daytime somnolence and the need to take one to two naps per day is not explicitly documented in the decision. Nonetheless, the ALJ accurately recounted the medical evidence of record as such related to Plaintiff's obstructive sleep apnea and a fair reading of the decision reveals that he adequately discounted the allegations related to such. To this end, the ALJ noted that (1) Plaintiff's obstructive sleep apnea was initially documented as early as May 1988, at which time it was responsive to CPAP, (2) during the period in question, i.e., from Plaintiff's alleged onset date through his date last insured, he first complained of snoring/apnea and daytime somnolence to Dr. Ricardo Rivera Morales in May 1999, at which time a sleep study was conducted, (3) the sleep study was positive for obstructive sleep apnea and required the use of a CPAP, (4) Plaintiff's doctor noted poor tolerance of the CPAP in November 1999 due to discomfort, (5) Plaintiff did not seek treatment thereafter until March 2001, at which time he reported that he was not using the

CPAP and was experiencing hypersomnolence and snoring, (6) a sleep study conducted in April 2001 revealed only one episode of obstructive apnea and a positive response was noted with the use of the CPAP, (7) when Plaintiff was hospitalized in September 2001 for acute bronchitis, records document that a CPAP was used at night since Plaintiff used one at home, and (8) following his discharge from the hospital through his date last insured, Plaintiff reported no significant problems with respect to his obstructive sleep apnea or with respect to use of the CPAP. (R. 25-26). The ALJ noted further that although medical records dated after Plaintiff's date last insured, from June through September 2003, revealed obstructive sleep apnea of a severe degree, the apneas were almost completely abolished with the CPAP and BiPAP, and Plaintiff reported that when using it, he woke up refreshed and had no daytime hypersomnolence. (R. 26). The ALJ then concluded:

> Given these findings, the evidence shows that the claimant has a good response to his obstructive sleep apnea when using either CPAP or BiPAP. Given his testimony that he tried to use it regularly and the lack of significant chronic complaints about the problem or non-responsiveness to prescribed treatment during the period in question, the undersigned finds that at the very least, the claimant has the capacity to perform simple repetitive mental tasks and that he could likely achieve sufficient mental acuity, attention and concentration to perform semi-skilled activity as well. To the effect that the claimant and his wife testified to the contrary, the undersigned finds this to be not fully credible given the documented clinical findings and contemporaneous complaints.

(R. 26). Thus, while the ALJ did not specifically mention Plaintiff's allegation that his sleep apnea resulted in his need for one or two daytime naps, a fair reading of his decision reveals that he adequately discounted the limitations resulting from Plaintiff's sleep apnea. Moreover,

10

the ALJ's reasons for doing so are rational and supported by the record.[2]  Plaintiff

undoubtedly suffered from obstructive sleep apnea during the period in question and the ALJ

so concluded; however, the evidence that Plaintiff points to on this appeal does not

demonstrate as unsupported the ALJ's rejection of Plaintiff's testimony that he required one to

two naps a day due to his sleep apnea.[3]


IV.

        For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the

Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

        **Done and Ordered** at Tampa, Florida, this 16th day of March 2007.


THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of record

---

        [2]To this end, it is worth reiterating that, even if the court finds that the evidence
preponderates against the ALJ's decision, it may not reweigh the evidence or substitute its
own judgment for that of the ALJ.  See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.
1990); Bloodsworth, 703 F.2d at 1239.

        [3]Notably, Plaintiff does not explain that the results of his sleep study in 1988, a time at
which he was working, were just as significant (if not more so) than those of the sleep study
conducted in 2001.  Compare (R. 109) with (R. 101).  Nor does he explain the absence of
documented complaints in the record from his alleged onset date to May 1999, and again from
his hospitalization in September 2001, through his date last insured.  While Plaintiff clearly
experienced some difficulties with the fitting of the CPAP mask, it does not appear that such
was a constant, ongoing problem to the degree that it resulted in entirely no benefit.